UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 20-cr-152 (ABJ) |
| | : | |
| DOMINIQUE MAXEY | : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

On May 31, 2020, amid protests over the murder of George Floyd by a police officer, Dominique Maxey went through a broken window into a closed bank, ran through the bank with other individuals, went behind the tellers' windows, opened some drawers, and exited the bank through the broken window. He was inside the bank for less than a minute. As a resulted, on August 15, 2023, Mr. Maxey entered a guilty plea to one misdemeanor count of unlawful entry, in violation of D.C. Code § 22-3302. As the Probation Office recognizes, a period of incarceration is not necessary to serve the purposes of sentencing. ECF 73. The Probation Office recommends a two-year term of probation, *id.*, but for the reasons set forth below, such supervision also is not necessary to serve the purposes of sentencing.

**Factual Background**

Mr. Maxey is now 29 years old. He grew up in New York and remains close with his mother, who is battling cancer. He has spent a great deal of time helping to care for her. Recently, he moved to Richmond, Virginia, and he hopes to build a life there and eventually have his mother move there too. Since moving to Richmond, he has started three part-time jobs. He works at Cabo Fish Taco, Sticky Rice, and the Jungle Room.

The instant offense occurred on May 31, 2020 at approximately 2 a.m. The previous day, Mr. Maxey joined others in peacefully protesting racial injustice in the wake of the murder of

George Floyd. As the Washington Post reported, however, when the sun went down, anger erupted into violence. *See* https://www.washingtonpost.com/local/dc-braces-for-third-day-of-protests-and-clashes-over-death-of-george-floyd/2020/05/31/589471a4-a33b-11ea-b473-04905b1af82b_story.html. Mr. Maxey is not accused of destroying property or assaulting anyone, but he did stay in the downtown area as the violence erupted—a mistake that he now regrets. Mr. Maxey cannot fully explain his decision to stay in the area even as the protests turned violent, but he was intoxicated at the time. His perceptions were blurred, and he remembers thinking that the world was ending. As he and a friend walked by the Sun Trust Bank on K Street, N.W. at about 2 a.m., they saw that others had broken the ATM and smashed the window. At first, Mr. Maxey walked away, but in a moment of extremely poor judgment, he ran back to the bank and walked through the window. Several others did the same. He went behind the teller counter and looked through draws and cabinets. He was in the bank for less than a minute.

     Mr. Maxey was arrested and charged in this matter with bank robbery. Although his offense did not rise to the level of bank robbery, that charge terrified him and caused him to reevaluate his excessive use of alcohol and marijuana. Mr. Maxey's misdemeanor conviction in this matter is his only criminal conviction. Five years ago, in 2018, he entered and completed a diversion agreement in relation to an attempted possession of a prohibit weapon (a pocketknife), and he has other prior arrests but no prior convictions. At the time of his prior arrests and at the time of the instant offense, Mr. Maxey was under the influence of alcohol. Mr. Maxey was released on his personal recognizance in this matter on the day after his arrest, June 1, 2020. Since that date, he has not consumed alcohol or marijuana. He has been on pretrial release for nearly three and a half years. Over those years, he neglected to call Pretrial Services for his

weekly check-in on three occasions, but otherwise there are no allegations of any violations of the conditions of his release.

## Argument

When imposing a sentence, the Court must consider several factors, including (1) the United States Sentencing Guidelines; (2) the nature and circumstances of the offense; (3) the history and characteristics of the defendant; (4) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence to criminal conduct, along with the kinds of sentences available; and (5) the need to avoid unwarranted disparities. *See* 18 U.S.C. § 3553(a); *United States v. Booker*, 543 U.S. 220, 259 (2005).

Congress has further provided that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.*

*See* 18 U.S.C. § 3582 (emphasis added). With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a) (emphasis added).

Here, any term of incarceration would be greater than necessary to serve the purposes of sentencing. *See* 18 U.S.C. § 3553(a) (court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the purposes [of sentencing]" (emphasis added)); *see also* U.S.S.G. § 5C1.1., Appl. Note 4 (Nov. 1, 2023) (citing 28 U.S.C. § 994(j) ("The Commission shall insure that the guidelines reflect the general appropriateness of imposing a

sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense . . .")).

The United States Sentencing Guidelines are not applicable because the count of convictions is a violation of the District of Columbia Code. The District of Columbia Voluntary Sentencing Guidelines also do not apply because the offense is a misdemeanor. PSR ¶ 16. However, the provisions of the United States Sentencing Guidelines, while not directly applicable, support a sentence that does not include a term of incarceration. If the Guidelines applied, the new Zero-Point Offender provision, U.S.S.G. § 4C1.1, would apply because Mr. Maxey has no prior criminal history, and the offense meets the requirements of § 4C1.1. *See* PSR ¶ 17-18. The amendments to U.S.S.G. § 5C1.1 provide that when an offender qualifies as Zero-Point Offender and "the defendant's applicable guideline range is in Zone A or B of the Sentencing Table, a sentence other than a sentence of imprisonment . . . is generally appropriate." § 5C1.1, Application Note 10 (citing 28 U.S.C. § 994(j)). The Commission created § 4C1.1 and amended § 5C1.1 to ensure implementation of Congress's directive in 28 U.S.C. § 994(j). *See* Amendments to Sentencing Guidelines (April 27, 2023) at 78-80. Section 994(j) provides: "The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense . . . ." Here, both Congress's directive and the Guidelines support a sentence that does not include a term of imprisonment because Mr. Maxey is a first offender who has not been convicted of a crime of violence or an otherwise serious offense.

The nature and circumstances of the offense also support a sentence the does not include a term of imprisonment. While Mr. Maxey is responsible for entering the bank without

permission; he did not break the window to the bank or destroy property. When he entered the bank, it was not inhabited, and his conduct did not directly endanger anyone. He was in the bank for less than 20 seconds. Mr. Maxey entered the bank in the midst of chaos that was occurring in the streets of Washington, D.C. At the time, Mr. Maxey was intoxicated and felt like "the world was ending." He exercised very bad judgment.

Mr. Maxey's history and characteristics also support a sentence of time served with no supervision to follow. Mr. Maxey has no prior criminal convictions. He has a history of employment and caring for his mother. He currently is working three jobs, and he has proven over the last three and a half years that he can comply with court supervision. Given the length of his pretrial supervision and his compliance, no additional term of supervision is necessary to serve the purposes of sentencing.

The "Court's overarching duty" is to "'impose a sentence sufficient, but not greater than necessary,'" *Pepper*, 562 U.S. at 493 (quoting 18 U.S.C. § 3553(a)), to comply with "the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation," *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017); *see also* 18 U.S.C. § 3553(a)(2). Mr. Maxey's arrest and conviction in this matter has had a significant punishing effect. Mr. Maxey quickly learned the seriousness of violating federal law, and the fear of incarceration alone has been stressful and punishing, serving as specific deterrence. In addition, Sentencing Commission data analyzing recidivism rates shows that individuals, like Mr. Maxey, with zero criminal history points have considerably lower recidivism rates, including lower recidivism rates than the individuals in Criminal History Category I with one criminal history point. *See* United States Sentencing Commission, *Recidivism of Federal Offenders Released in 2010* (Sept. 2021), available at https://www.ussc.

gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210930_ Recidivism.pdf. The Commission found that just over one-quarter (26.8%) of individuals with zero criminal history points were rearrested. *Id*. at 26. The rearrest rate of zero-point individuals was significantly lower than individuals with just one criminal history point, of which 42.3% were rearrested. *Id*. The variation between individuals with zero and one criminal history point was the largest variation of any comparison of offenders within the same Criminal History Category. *Id*. Mr. Maxey's zero criminal history points makes him statistically less likely to reoffend or be rearrested. The low likelihood of rearrest supports a finding that a sentence of time served is sufficient, but not greater than necessary, to provide adequate deterrence and protect the public.

His arrest and the charges in this matter also caused Mr. Maxey to get sober—he essentially rehabilitated himself while on pretrial release. The circumstances of the offense do not support a finding that a term of incarceration is needed to protect the public, and Mr. Maxey's conduct on pretrial release has proven that such a term is not necessary.

## Conclusion

For the foregoing reasons, Mr. Maxey respectfully requests that the Court impose a sentence of time served with no supervision to follow.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

_____
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500